Robert W. BARNES, Movant,

v.

The CHESAPEAKE & OHIO RAILWAY COMPANY, etc., Respondent.

Supreme Court of Kentucky.

Dec. 19, 1978.

Certiorari Denied May 14, 1979.   See 99 S.Ct. 2165.

DeParcq, Anderson, Perl, Hunegs & Rudquist, Minneapolis, Minn., Warnock & Warnock, Greenup, for movant.

Gray, Woods & Cooper, Ashland, J. D. Atkinson, Jr., Greenup, for respondent.

STERNBERG, Justice.

The movant (Barnes) seeks to recover damages from the respondent (The Chesapeake & Ohio Railway Company (C&O)) for personal injuries received by him while employed by the Holland Company (Holland), allegedly the agent of C&O. The primary question is: By whom was Barnes employed at the time of his injuries?

Barnes charges that the C&O is using Holland as a subterfuge to avoid the Federal Employers' Liability Act (FELA). He further states that in truth and in fact Holland is the agent of C&O and he, in turn, as an employee of Holland at the time of his injuries was actually an employee of

C&O under the terms of FELA and entitled to its benefits. This is denied by C&O.

On October 16, 1970, the C&O entered into a "lease and agreement" with Holland whereby Holland would operate C&O's rail-welding plant. By the terms of the "lease and agreement," Holland undertook the task of joining sections of rails to a designated length by the use of specialty-type welding equipment owned by Holland. On July 15, 1971, and again on April 2, 1973, Barnes was injured while assisting a fellow employee in doing the work they were employed by Holland to do.

On October 29, 1973, Barnes filed suit against the C&O in the Greenup Circuit Court seeking to recover damages in the sum of $300,000 for personal injuries. Depositions, interrogatories and their answers, and affidavits were filed in support of motions for summary judgment by both Barnes and C&O. In *Kelley v. Southern Pacific Company,* 419 U.S. 318, 95 S.Ct. 472, 42 L.Ed.2d 498 (1974), the court said: "Under the FELA, a covered railroad is liable for negligently causing the injury or death of any person 'while he is employed' by the railroad. Although petitioner acknowledged that he was technically in the employ of a trucking company rather than the railroad, he contended that his work was sufficiently under the control of the railroad to bring him within the coverage of FELA." On August 9, 1974, after arguments of counsel, the trial judge announced from the bench that summary judgment should go for C&O, and its counsel was directed to prepare the order. Thereafter, Barnes filed two motions, each requesting the trial court to reconsider the propriety of its action in granting summary judgment in favor of C&O. At that time he also sought to have the deposition of James E. Vaught taken August 1, 1974, and the affidavit of Albert Barnes dated August 25, 1974, filed and considered by the trial court in disposing of his motions for reconsideration. Over the objection of C&O, the trial court permitted the deposition and the affidavit to be filed, and it considered them in denying the motion to reconsider. On August 26, 1974, the

trial court entered summary judgment dismissing Barnes' complaint and amended complaint.

The judgment of the trial court was affirmed on appeal. This court granted discretionary review on June 6, 1978.

Barnes charges that the trial court committed three reversible errors in arriving at its answer to the primary question.

First, Barnes argues that C&O had the right to and did control his work activities; thus he contends C&O is his employer and he is its employee and entitled to the benefits of FELA. Barnes states that the issue of control is one to be determined by a jury after a full, factual hearing. With this statement, we are in full accord. However, where there is no genuine issue of fact which would support a finding that at the time of the injuries Barnes was under the control of C&O, the issue becomes a question of law for the judge to decide. This he did—summary judgment in favor of C&O.

For 18 years Barnes worked for Holland in its railwelding operations. The whole railwelding operation is performed on what is classified as a line production method. The 1971 injury was caused by a rail having jammed while on the railwelding assembly line. Barnes, while assisting another employee of Holland's, in an effort to release the jammed rail used a welding torch to cut the rail, which broke and seriously injured him. At the time of the 1973 injury Barnes was assisting James Taulbee, another employee of Holland's, in loosening bars to separate rails. Taulbee fell against Barnes, knocking him to the floor of the car and injuring him. During these 18 years Barnes sustained other injuries, some minor and others not so minor, which are not herein complained of and which have not been the subject of litigation. Never has he on any such occasions prior to the subject litigation contended that he was an employee of any company other than Holland. As a result of the 1971 and 1973 injuries, Barnes received negligible workmen's compensation benefits through Holland.

In an effort to determine the question of control or the right to control, we need to consider the rights, obligations and responsibilities of the respective parties. As to Holland, they were:

1. It had the right to hire and fire and the right to negotiate with its employees through a labor union in the fixing of wages;

2. It owned and utilized specialty-type railwelding equipment;

3. Payment of wages was made with checks of Holland, with the usual and necessary withholding deductions;

4. By its lease and agreement, it contracted for the use of all of C&O's railwelding equipment and facilities, except the specialty equipment which it owned;

5. It trained its own personnel;

6. Its employees were members of the United Steel Workers of America;

7. It had the responsibility for the maintenance of all of the equipment;

8. It had other similar operations going on at other places in the United States and Canada;

9. It determined the means and methods for doing the work;

10. It controlled the amount of work;

11. It contributed one-half of the premiums for the employees' life insurance and medical coverage; and

12. It controlled what work was to be done and how to do it.

As to C&O, they were:

1. It delivered rails to Holland at Worthington, Ky.;

2. It advised Holland of the type of rails to be welded;

3. It furnished and designated trains onto which the welded rails were to be loaded; and

4. It had the right to inspect and reject any weld of inferior quality.

In the determination of the issue, we must decide whether Barnes was employed by the railroad company at the time he was injured. The determination of this issue comes from a consideration of all of the circumstances of the case. The primary factor is whether the railroad company had

the power to direct, control, or supervise Barnes in the performance of the work at the time of his injuries. *Kelley v. Southern Pacific Company,* supra; *De Paola v. New York, New Haven & Hartford Railroad Company,* 198 F.Supp. 12 (1961).

When we compare the relative positions of the parties, it is evident that the "lease and agreement" provided for a day-to-day work program for the peripheral benefit of the railroad. It was not such a work program that was compulsory for the operation of the railroad system.

In *Kelley v. Southern Pacific Company,* supra, the Supreme Court of the United States, in speaking of control, said:

"Under common-law principles, there are basically three methods by which a plaintiff can establish his 'employment' with a rail carrier for FELA purposes even while he is nominally employed by another. First, the employee could be serving as the borrowed servant of the railroad at the time of his injury. * * Second, he could be deemed to be acting for two masters simultaneously. * * * Finally, he could be a subservant of a company that was in turn a servant of the railroad. * * *.

     *    *    *    *    *    *

* * * Because the evidence of control or right to control was in serious dispute, the Court held that the case must be permitted to go to the jury. As we have indicated, however, the District Court found no such day-to-day supervision that would support a finding that petitioner and his coworkers were, in effect, employees of the railroad."

The facts in the instant case make it apparent that Barnes was not the borrowed servant of C&O at the time of his injuries, was not acting for both C&O and Holland at the time of his injuries and, finally, for the reason that Holland was not a servant of C&O, was not a "subservant" of Holland. Consequently, Barnes was not under the control of C&O so as to qualify for relief under the terms of the FELA. On each of the said two occasions Barnes was an employee of Holland, not of C&O. His work benefited the C&O only insofar as his participation, together with other fellow employees of Holland, in the work program was beneficial to C&O. The responsibility for operating the production line effort from beginning to end (alpha to omega) was that of Holland and not of C&O. C&O's participation in all respects was minimal and gratuitous and not by reason of its responsibility to do so.

■ In the case at bar the trial court found as a matter of law that Holland was an independent contractor and that at the time of his injuries Barnes was an employee of Holland, not an employee of C&O, and was not entitled to the benefits of FELA. This finding was affirmed by the Court of Appeals.

We have reviewed the record with care, and find that the trial court did not err in granting summary judgment to C&O.

The movant next charges that the trial court erred in ruling that as a matter of law the contract between C&O and Holland did not violate the FELA. Section 5 of the FELA states:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability created by this act, shall to that extent be void."

■ We note with particularity that this section applies to those contracts wherein a railroad seeks to exempt itself from liability created by the Act. It does not hold as a matter of law that every contract executed by a railroad is void if one of its net results would avoid liability under the FELA. There certainly is no policy to prevent a railroad or any other business organization from performing its functions through independent contractors rather than through servants of its own. We find nothing in the record to suggest a subterfuge between C&O and Holland, whereby the railroad purposefully attempted to avoid liability under the FELA by entering into the subject contract with Holland. We certainly will not read such a

purpose into the contract where none is clearly presented. We are of the opinion that each case must stand or fall on the facts therein developed. Irrespective of the fact that the result of Barnes' work, together with the work of the other employees of Holland, could be classified as beneficial in the proper operation of a railroad, there is not one shred of evidence that the "lease and agreement" between C&O and Holland was executed for the purpose of avoiding liability under the FELA.

The action of the trial court in permitting the deposition and the affidavit to be filed and its action in considering them in disposing of the motion for reconsideration is now under attack.

This court is of the opinion that even without the benefit of the deposition and the affidavit, there still was no genuine issue of material fact that at the time of Barnes' injuries he was engaged in work which properly was that of the railroad. Consequently, we do not reach this alleged error.

The decision of the Court of Appeals is affirmed.

All concur, except REED, J., who concurs in result only.